UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY J. LEWIS, | No. 2:24-cv-01608 SCR |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-34. Because the ALJ erred in discounting plaintiff's subjective pain testimony, plaintiff's motion for summary judgment (ECF No. 12) will be granted and the Commissioner's cross-motion for summary judgment (ECF No. 14) will be denied.

## BACKGROUND

**I.      Procedural Background**

Plaintiff applied for DIB benefits on June 7, 2022, alleging disability beginning May 24, 2022. (Administrative Record ("AR") 17.)[1] The claim was denied initially on November 14,

---

[1] The AR is electrically filed at ECF No. 6-1. AR page references are to the number in the lower righthand corner of the page, not the CM/ECF generated header. References to briefs are to the

1

2022, and upon reconsideration on April 27, 2023. (Id.) On October 5, 2023, administrative law judge ("ALJ") Carol Eckersen presided over a telephonic hearing on Plaintiff's claim. Plaintiff participated in the hearing and was represented by a non-attorney representative. (Id.) Cathleen Spencer, an impartial vocational expert, also testified. (See AR 74-82.)

On February 15, 2024, the ALJ issued an unfavorable decision, finding plaintiff not disabled under the Act. (AR 14-31.) Plaintiff requested review of the ALJ's decision on the same day. (AR 5.) On April 11, 2024, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (AR 1-4.)

## II. Factual Background

### A. Plaintiff's Testimony

Plaintiff was born in 1959 and was 62 years old when he applied for DIB in June 2022. (AR 34.) Plaintiff has a high school diploma. (AR 44.) Plaintiff has owned and operated a retail/wholesale car dealership since 2008. (AR 46-47.) Plaintiff sold off his inventory and shut down his business in June of 2022 because of his conditions. (AR 56-57.)

At the administrative hearing on October 5, 2022, plaintiff testified that he suffers from back pain that shoots down his left leg that makes it difficult to walk or sit. (AR 57-60.) Plaintiff stated that he can only walk for five minutes before he doubles over from pain and fatigue. (AR 60.) Plaintiff has used oxycodone, Percocet, cyclobenzaprine, and marijuana for the pain. (61-62.) He gets about five or six hours of interrupted sleep per night. (AR 64.) Plaintiff receives care from Shasta Orthopedics and is on a treatment plan of ablation injections to the tailbone area. (AR 71.) Plaintiff also complained of increased mucus that affects his breathing since receiving treatment and surgery for tonsil cancer in 2014. (AR 72-73.)

Plaintiff lives with his partner. (AR 38.) He can do "very little" chores around the house. (AR 65-66.) Plaintiff can drive a car but only in fifteen-minute trips. (AR 41-42.) It has been a couple of years since plaintiff and has partner have taken a trip because of his limitations. (AR 42-43.)

page number generated on the CM/ECF header.

**B. Vocational Expert Testimony**

Cathleen Spencer testified as an impartial vocational expert ("VE"). (AR 74-82.) The VE's testimony is discussed at length in the ALJ's decision. (See AR 24-26.) The VE testified that a hypothetical person of plaintiff's same age, education and work history, capable of light work with non-exertional limitations, would not be capable of plaintiff's past work. (AR 76.) The VE further testified that plaintiff would have transferable skills to other light work, namely salesperson, automobile; manager service department; automobile repair service estimator; manager of auto service; and manager, procurement services. (AR 75-79.) The VE stated two half-hour breaks are within employer tolerances, but that a hypothetical individual off-task 20% of the day due to pain or medication side effects would fall outside such tolerances. (AR 80-81.)

**STANDARD OF REVIEW**

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in the decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)).

**RELEVANT LEGAL STANDARDS**

**I.    Five-Step Sequential Evaluation Process**

A claimant is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).

The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step

4

three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

    Step four: Does the claimant's residual functional capacity make her capable of performing her past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); see also Bowen, 482 U.S. at 146 n.5.

## THE ALJ'S DECISION

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024. (AR 19.)

2. [Step 1] The claimant has not engaged in substantial gainful activity since the alleged onset date of May 24, 2022. (AR 19.)

3. [Step 2] The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, diabetes mellitus without complications, chronic sinusitis with post-nasal drip, and obesity. (AR 19.)

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR 19.)

5. [Preparation for Step 4] After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasionally climb, frequently balance,

occasionally stoop, frequently kneel or crouch, and occasionally crawl; avoid concentrated exposure to heat, fumes, odors, dusts, gases, poor ventilation, hazards, machinery and heights. (AR 20.)

6. [Step 4] The claimant is unable to perform any past relevant work. (AR 24.)

7. [Preparation for Step 5] The claimant was born on November 10, 1959 and was 62 years old, which is defined as an individual closely approaching retirement age, on the alleged onset date of May 24, 2022. (AR 25.)

8. [Preparation for Step 5] The claimant has at least a high school education. (AR 25.)

9. [Preparation for Step 5] Since the alleged onset date of May 24, 2022, the claimant has acquired work skills from past relevant work. (AR 25.)

10. [Step 5] Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.

11. [Conclusion] The claimant has not been under a disability, as defined in the Social Security Act, from May 24, 2022, through the date of this decision. (AR 26.)

## DISCUSSION

Plaintiff raises three points of error. Plaintiff alleges the ALJ erred by: (1) misinterpreting consultative physician Dr. Wei-Xian Li's testimony regarding plaintiff's walking and standing limitations; (2) rejecting plaintiff's subjective pain symptom testimony; and (3) identifying occupations at step 5 that exceed the plaintiff's residual functioning capacity. (ECF No. 12.) Defendant disputes each of these claims of error in the opposition/cross motion for summary judgment. (ECF No. 14.) The undersigned will address each point in turn.

I. **Whether the ALJ Erred in the Analysis of Dr. Li's Assessment**

   A. **Dr. Li's Standing and Walking Limitation Opinions**

Plaintiff argues the ALJ erred in analyzing the medical opinion of Dr. Li. (ECF No. 12 at 11-12.) Dr. Li examined plaintiff on September 25, 2022, in connection with his claim for DIB. (AR 303-308). At issue are the following walking and standing limitations identified by Dr. Li:

> Standing: The number of hours he should be able to stand during a normal 8-hour workday is about 4-6+. Due to low back pain with radicular symptoms in the left leg.
>
> Walking: The number of hours he should be able to walk during anormal 8-hour workday is about 4-6+. Due to low back pain with radicular symptoms in the left leg.

6

(AR 307.) The ALJ ultimately found Dr. Li's opinion persuasive and "substantively consistent" with the state agency medical consultants, Dr. DeSouza and Dr. Ford:

> Here, Dr. DeSouza, Dr. Ford [the state agency medical consultants], and Dr. Li's opinions are found to be persuasive as they are substantially consistent with each other in finding the claimant was limited to light exertional work with the non-exertional limitations discussed above, and their physical findings were consistent with and supported by the overall medical records from the claimant's alleged onset date of May 24, 2022. Dr. DeSouza and Dr. Ford's opinions were based on their own individual review of the claimant's medical records, and Dr. Li's opinion was based on his direct examination, observations and objective physical findings.

(AR 24.) Notably, both Dr. DeSouza and Dr. Ford found that plaintiff could stand and walk "[a]bout 6 hours in an 8-hour workday." (AR 90, 109.)

Plaintiff argues that the ALJ misunderstood Dr. Li's opinion that he could walk or stand more than "4-6+ hours" per 8-hour workday:

> In opining that Mr. Lewis is limited standing and walking "4-6+" per workday Dr. Li was obviously referring to a variable maximum number of hours that Mr. Lewis would be able to stand and walk in a workplace environment, i.e., on bad days he might be able stand and walk 4 hours, and on good days he might be able to stand and walk in excess of 6 hours. This distinction is critical because, if Mr. Lewis were limited to standing and walking no more than four hours per workday on some days, he is unlikely to be able to perform all of the occupations that the ALJ identified at step five of the sequential evaluation process.

(ECF No. 12 at 12.) Plaintiff maintains this was error because the ALJ failed to explain why she rejected this "key vocational limitation" identified in Dr. Li's report. (Id. at 13 (citing SSR 96-8p, 1996 WL 374184).) Defendant counters that plaintiff does not explain why his interpretation of Dr. Li's functional assessment should prevail over the ALJ's interpretation. (ECF No. 14 at 6.) Further, defendant emphasizes that plaintiff did not challenge the ALJ's reliance on the opinions of Drs. DeSouza and Ford, conceding the correctness of their assessments. (Id. at 6, n.2.)

**B. Analysis**

An ALJ's decision on how to credit a medical opinion "must simply be supported by substantial evidence." Woods v. Kijakazi, 32 F.4th 785, 787 (9th Cir. 2022). The ALJ must "articulate . . . how persuasive" it finds "'all of the medical opinions' from each doctor' and look at supportability and consistency in the record." Id. at 792 (quoting 20 C.F.R. § 404.1520c(b)).

"It is not necessary to agree with everything an expert witness says in order to hold that

his testimony contains 'substantial evidence.'" Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (quotation omitted); see also Tammie C. v. Saul, No. 20-CV-1008 TSH, 2021 WL 121128, at *9 (N.D. Cal. Jan. 13, 2021) ("[T]he ALJ was not required to adopt everything contained in [the medical expert's] opinion simply because she gave the opinion significant weight."). Nor is an ALJ obligated to each address specific opinion in an expert's assessment. "[W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), [ALJs] will articulate how [they] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis . . . . [ALJs] are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1).

As an initial matter, it is not obvious that standing and walking limitations of "4-6+" hours per workday are inconsistent with the ALJ's residual functioning capacity assessment. The ALJ determined plaintiff could do less than a full range of "light work," which, by definition, "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls."[2] 20 C.F.R. § 404.1567(b) (emphasis added). At worst, the compatibility of Dr. Li's standing and walking opinions with light work is ambiguous, and "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citations omitted).

Regardless, even assuming the ALJ rejected Dr. Li's standing and walking limitations as plaintiff asserts, substantial evidence still supports the ALJ's decision to credit Dr. Li's opinion. The ALJ thoroughly reviewed Dr. Li's direct observations of plaintiff and physical examination findings, noting that plaintiff appeared comfortable with no pain mitigating mannerisms and that Dr. Li found no tenderness to palpation in the affected areas. (AR 23.) The ALJ also considered plaintiff's subjective reports and complaints to Dr. Li, including that plaintiff gave up his dealership due to lower back pain but is still able to perform activities of daily living, engage in

---

[2] Further, if someone can do light work, they can also do sedentary work unless there are "additional limiting factors such as . . . inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). Here, Dr. Li determined "[t]here are no recommended limitations regarding the number of hours that he should be able to sit during a normal eight-hour workday." (AR 307.)

hobbies including fishing, and currently exercises on the elliptical machine 2-3 times a week. (Id.) The ALJ ultimately concluded that Dr. Li's functional limitation opinions were "substantially consistent" with the opinions of Drs. DeSouza and Ford, and supported her finding that plaintiff has the residual capacity to perform less than a full range of light work. (AR 23-24.)

Accordingly, the ALJ's decision to credit Dr. Li's opinion was supported by substantial and a thorough analysis. Because there is no error, the undersigned need not address plaintiff's related harmless error arguments.

## II.   Whether the ALJ Properly Rejected Plaintiff's Subjective Symptom Testimony

### A. Legal Standard

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (internal citations and quotation marks omitted). The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. at 1036 (quoting Smolen v Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Id.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Lingenfelter, 504 F.3d at 1036 (quoting Smolen, 80 F.3d at 1282). The Ninth Circuit has described the finding required as follows:

> [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

9

Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015).  "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work[.]" Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).  The clear and convincing standard is "not an easy requirement to meet" and the "most demanding requirement in Social Security cases." Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (citation omitted).

### B. The ALJ's Credibility Determination

In the first step of the analysis, the ALJ found that plaintiff's degenerative disc disease of the lumbar spine, diabetes mellitus without complications, chronic sinusitis with post-nasal drip, and obesity "could reasonably be expected to cause the alleged symptoms." (AR 20.)  At the second step, the ALJ found no malingering but concluded plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (AR 20-21.)  After summarizing the medical record and medical opinion evidence, the ALJ concluded:

> [T]he above residual functional capacity assessment is supported by the medical opinion evidence, objective medical findings, the State agency, and the record as a whole. The State agency sources and consultative examiners found that the claimant is capable of full range of work of light work. Therefore, it is found that the claimant has the residual functional capacity to perform less than the full range of light work with the following non-exertional limitations discussed above.

(AR 24.)

Plaintiff argues this finding was error because the ALJ "offered no reasons for rejecting the plaintiff's symptom testimony, let alone specific, clear, or convincing ones."  (ECF No. 12 at 17.)  Plaintiff further claims that "[n]one of the medical records summarized by the ALJ indicate that the plaintiff does not have radicular back pain that shoots down his leg and severely limits his ability to walk."  (Id. at 17-18.)  Defendant counters that the ALJ reasonably discounted plaintiff's symptom testimony due to inconsistencies with the objective medical evidence and other record evidence.  (ECF No. 14 at 2-4.)

### C. Analysis

#### i. The ALJ Did Not Identify the Testimony She Found Not Credible

The ALJ did not specify which pain symptom testimony she found not credible.  Instead,

the ALJ rejected the general allegation that plaintiff "is unable to work due to the functional limitations caused by his physical impairments," and cited to plaintiff's entire hearing testimony and Exhibit 2E/2 (AR 201), a Form SSA-3368 in which plaintiff simply stated that he stopped working "[b]ecause of my condition(s)." (AR 20.) The ALJ went on to summarize the objective medical evidence (AR 21-23) and medical opinion evidence (AR 23-24) underlying the residual capacity assessment without linking it to any specific part of plaintiff's testimony.

The ALJ's general credibility finding, supported by summaries of the medical evidence untethered to any specific testimony, is not a clear and convincing explanation. A "summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." Brown-Hunter, 806 F.3d at 494 (emphasis in original). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." Id.; see also Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020) (ALJ's "relatively detailed overview" of claimant's medical history did not satisfy clear and convincing standard where ALJ never identified the testimony she found not credible).

Nor does the ALJ's reference to plaintiff's entire hearing testimony or Exhibit 2E/2 provide an adequate roadmap for review. When an ALJ fails to specify the discredited symptom testimony, district courts may not comb the hearing transcript for inconsistencies reasonably inferred from the ALJ's summary of the medical evidence. Brown-Hunter, 806 F.3d at 494 ("[T]he credibility determination is exclusively the ALJ's to make, and ours only to review."); see also Lambert, 980 F.3d at 1278 (holding that district court's "efforts to shore up the ALJ's decision" with citations to the record were improper); Holcomb v. Saul, 832 F. App'x 505, 506 (9th Cir. 2020) (declining to "infer the ALJ's reasoning by examining the weight given to particular medical evidence").

Defendant maintains that the ALJ's discussion of the medical and other evidence satisfied the clear and convincing standard. (ECF No. 14 at 3-4.) But in the opposition/cross summary-judgment motion, defendant similarly works backward to match purported inconsistencies in plaintiff's hearing testimony to the ALJ's summaries of the medical and other evidence. (See id.)

11

Thus, defendant's own efforts to comb the transcript for support illustrates that the ALJ did not in fact show her work. Accordingly, because it precludes meaningful review, the ALJ's failure to specify the parts of plaintiff's testimony that she found not credible is reversible error.[3]

### ii. The Medical Summaries Do Not Contradict Plaintiff's Pain Testimony

While the ALJ's failure to connect the medical summaries to specific testimony falls short of the clear and convincing standard, the undersigned also agrees with plaintiff that the medical summaries themselves do not refute his back pain symptoms. Thus, to the extent the ALJ discredited plaintiff's back pain testimony based on objective medical evidence, the decision is also unsupported by substantial evidence.

Objective medical evidence is a relevant factor in determining the severity and persistence of a claimant's pain symptoms. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498 (emphasis in original); see also Jones v. O'Malley, No. 23-16136, 2024 WL 3963835, at *1 (9th Cir. Aug. 28, 2024) ("An ALJ may reject a claimant's subjective symptom testimony based on contradictory medical evidence in the record").

Defendant argues the objective medical evidence was "not entirely consistent" with plaintiff's symptom testimony, but points only to records from plaintiff's April 2023 lumbar x-ray. (ECF No. 14 at 3.) According to the ALJ, "the Shasta Orthopedic record noted the claimant's 04/2023 lumbar x-ray findings did not support his radicular lumbar pain." (AR 22). However, none of the exhibits the ALJ cited (12F/1, 16F/1-4, 17F/21) contain this notation. (See

---

[3] See Brown-Hunter, 806 F.3d at 494 (finding reversible error where ALJ "made only a general credibility finding without providing any reviewable reasons why she found [claimant's] testimony to be not credible"); Lambert, 980 F.3d at 1277-78 (reversible error where ALJ offered "non-specific conclusions that [claimant's] testimony was inconsistent with her medical treatment); Holcomb, 832 F. App'x at 506 (reversible error where ALJ discussed relevant medical evidence but failed to link it to plaintiff's symptom testimony); Cervantes v. Dudek, No. 1:20-CV-1446 JLT BAM, 2025 WL 1521505, at *5 (E.D. Cal. May 28, 2025) (reversible error where ALJ "offered little more than a summary of the medical evidence related to Plaintiff's impairments [and] did not identify hearing testimony . . . that conflicted with this summary.").

1  AR 356, 524-527, 549.) Moreover, defendant overlooks that plaintiff's provider then
2  "recommended a lumbar MRI in the setting severe radicular symptoms to determine if caudal
3  injection would be recommended." (AR 22.) Thus, even if the x-ray findings "do not contain
4  evidence that fully explains [plaintiff's] symptoms, . . . they also do not *contradict* [his] account
5  of those symptoms." Johnson v. Kijakazi, No. 19-17359, 2022 WL 1553259, at *2 (9th Cir. May
6  17, 2022) (ALJ's reliance on normal to mild cardiac diagnostic findings was not supported by
7  substantial evidence where providers continued to closely monitor claimant's condition and
8  claimant reported consistent symptoms) (emphasis in original).

9        The ALJ went on to explain that the MRI, conducted in September 2023, revealed
10  "multilevel lumbar spine degenerative changes, and levoscoliosis, most conspicuous at L4-5
11  where there is a mild to moderate spinal stenosis and severe left neural foraminal stenosis." (AR
12  22.) The ALJ, however, did not mention that after reviewing the MRI, the provider
13  recommended a caudal injection, noted plaintiff "likely would benefit from MBB/RFAs" (medial
14  branch blocks and radiofrequency ablation), and found plaintiff's pain "is consistent with
15  radicular based on history, physical exam, and imaging." (AR 553-555, 559.)

16        In sum, the undersigned does not find any of the objective medical evidence summarized
17  by the ALJ to be plainly inconsistent with plaintiff's back pain symptoms. Accordingly, to the
18  extent the ALJ relied on that medical evidence to discredit plaintiff's testimony, her decision is
19  not supported by substantial evidence.

20      **III.**    **Whether the Occupations at Step Five Exceed the Residual Functioning Capacity**
21        The ALJ's residual functioning capacity finding included the non-exertional limitations of
22  avoiding concentrated exposure to hazards (e.g., machinery, heights). (AR 20.) Plaintiff argues
23  that this conflicts with the step-five finding that he is capable of performing the occupations of
24  salesperson automobile, manager service department, automobile repair service estimator, and
25  manager of auto service because they all "involve concentrated exposure to automobiles[.]"
26  (ECF No. 12 at 18-19.) Defendant argues that the non-exertional limitations apply to the
27  performance of hazardous tasks but do not preclude plaintiff from holding positions that merely
28  require him to be in the presence of a car. (ECF No. 14 at 8-9.) Defendant adds that the VE

expressly testified that plaintiff could perform the jobs and addressed a hypothetical that included a limitation to avoid concentrated exposure to machinery. (Id. at 9.)

Defendant's arguments regarding the ALJ's reliance on the VE are well taken. To support a finding of non-disability at this step, an ALJ must "provid[e] evidence that demonstrates that other work exists in significant numbers in the national economy that [claimant] can do." 20 C.F.R. § 416.960(c)(2). The ALJ relied on the VE's testimony, including the aforementioned hypothetical, in finding that plaintiff was unable to perform his past relevant work as an owner/operator of an auto dealer. (AR 24.) That position involved hauling cars, car maintenance, and other tasks requiring exertion and exposure to hazards beyond plaintiff's residual functioning capacity and non-exertional limitations. (Id.) The ALJ then determined the VE's testimony was consistent with the Dictionary of Occupational Titles and relied on it in finding plaintiff's work skills transferable to the jobs above considering his age, education, work experience, and residual functional capacity. (AR 25-26.)

A VE's testimony is inherently reliable in the absence of any contrary evidence. Buck v. Berryhill, 869 F.3d 1040, 1051 (9th Cir. 2017); see also Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (a VE's "recognized expertise provides the necessary foundation for his or her testimony."). Here, plaintiff has not put forth any evidence that calls the VE's testimony into question. He offers only FDA labels for Percocet and Oxycontin (ECF No. 12 at 18), which shed no light on whether the ALJ erred in finding the VE's testimony consistent with the occupational information for the jobs in question. In other words, even accepting that plaintiff's pain medication impairs his ability to perform hazardous tasks, plaintiff has not established that the jobs above even involve "concentrated exposure" to hazards as he suggests.

Accordingly, the ALJ did not err in relying on the VE's testimony to find that plaintiff could perform the occupations of salesperson automobile, manager service department, automobile repair service estimator, and manager of auto service.

## CONCLUSION

When a court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings." Leon v. Berryhill, 880 F.3d 1041, 1045 (9th Cir. 2017); see

also <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"). That is what the undersigned will do here.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is GRANTED;

2. Defendant's motion for summary judgment (ECF No. 14) is DENIED; and

3. The case REMANDED to the Commissioner for further proceedings on Plaintiff's disability claims consistent with this order. The Clerk of the Court shall enter judgment in favor of Plaintiff and close the case.

DATED: September 29, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE